**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    v.

**ARMANDO MUNOZ-RUBIO,**

    **Defendant.**

**Case No. 2:19-cr-259
JUDGE EDMUND A. SARGUS, JR.**

## OPINION AND ORDER

The matter before the Court is Defendant Armando Munoz-Rubio's ("Defendant") Motion to Dismiss the Indictment (ECF No. 25). The United States of America (the "United States" or the "Government") opposes dismissal (ECF No. 34). For the reasons stated herein, Defendant's Motion to Dismiss the Indictment (ECF No. 25) is **DENIED**.

**I.**

On December 12, 2019, a Grand Jury for the Southern District of Ohio returned a one-count Indictment charging the Defendant with Illegal Re-Entry of a Removed Alien, in violation of 8 U.S.C. § 1326(a). (Indictment at 1–2, ECF No. 11.) Defendant now moves to dismiss the Indictment, which reads as follows:

> On or about October 30, 2019, in the Southern District of Ohio, the defendant **ARMANDO MUNOZ-RUBIO (a/k/a "Armando MUNOS-Rubio" and a/k/a "Rubio Lopez")**, an alien who has previously been removed from the United States on or about April 17, 2009, April 19, 2009, January 7, 2010, September 24, 2013, and April 5, 2016 pursuant to a removal order, and who after said dates has not obtained consent of the Attorney General of the United States or the Secretary of the Department of Homeland Security to reapply for admission in the United States, knowingly entered and was found in the United States in the Southern District of Ohio.

(*Id.*) (emphasis in original).

Defendant was born in Mexico on January 28, 1988.  (Munoz-Rubio Decl. ¶ 1, ECF No. 25-1.)  Defendant first entered the United States on July 19, 2002 when he was 14 years-old to unite with his siblings and escape his parents' poverty.  (*Id.* ¶¶ 2–6.)  United States Customs and Border Patrol ("CBP") stopped Defendant and allowed him to voluntarily return to Mexico without a removal order.  (*Id.* ¶ 7.)  Later the same day, Defendant entered the United States successfully.  (*Id.* ¶ 8.)  Defendant lived in the United States until October 1, 2008 when CBP discovered him, detained him, and again allowed him to voluntarily return to Mexico.  (*Id.* ¶¶ 9–10.)

On April 17, 2019, Defendant again attempted to enter the United States to join his family.  (*Id.* ¶ 11.) That day CBP apprehended him and issued an expedited removal order.  (*Id.*; Mot. Dismiss Indictment at Ex. B, ECF No. 25, hereinafter "Mot. Dismiss;" Government Resp. Def.'s Mot. Dismiss Indictment at Ex. A, ECF No. 34, hereinafter "Resp.")  Four forms were executed as part of this proceeding: (1) an I-213 Record of Deportable Inadmissible Alien; (2) an I-867A Record of Sworn Statement in Proceedings; (3) an I-296 Notice to Alien Ordered Removed/Departure Verification; and (4) an I-860 Notice and Order of Expedited Removal.  (Resp. at Ex. A.)  The I-213 included a "Notice of Rights" section which is written in Spanish.  (*Id.*)  The I-867A indicates that the sworn statement was obtained in Spanish.  (*Id.*)  The I-213, I-867A, and I-296 all contain Defendant's signature.  (*Id.*)

Form I-867A contains the following information:

> You have been detained because the Immigration Service believes that you are in the United States illegally.  You have the right to a hearing before the Immigration Court, in order to decide whether you can remain in the United States.  In the event that you request a hearing, you may be detained or have the right to release on bail until the date of the hearing.  You have the option of requesting the return to your country as soon as possible, without a hearing.
>
> You have the right to contact a lawyer or other legal representative to represent you at the hearing, or to answer any questions about your rights under the law in the United States.

> If you request it, the officer who has given you this notice will give you a list of legal associations that could represent you for free or at little cost. You have the right to communicate with the consular or diplomatic service of your country. You can use the phone to call a lawyer, or another legal representative, or a consular officer at any time prior to your departure from the United States.

(Resp. at Ex. A.)  After this information Defendant's form provides that the immigration officer asked him if he understood this and he responded "yes."  (*Id.*)  The same form also contained the following response which Defendant signed:

> I admit that I am illegally in the United States, and do not consider myself in danger if I return to my country. I renounce my right to an immigration court hearing. I wish to return to my country as soon as my departure can be arranged. I understand that I could remain detained until my discharge.

(*Id.*)

Defendant contends that he was not given notice that he was in formal removal proceedings, the documents were not read to him, and his signature is not on every page. (Munoz-Rubio Decl. ¶¶ 11–21.)  Defendant also contends there is incorrect information on the forms that he would have corrected had it been read to him. (*See id.*)  Finally, Defendant stated that if he had understood the forms he would have responded differently. (*Id.* ¶ 24.)

The Government contends that Defendant entered the United States again on April 19, 2009, was apprehended, and the same documents as listed above were executed. (Resp. at Ex. B.) Defendant argues he only entered the United States once on either April 17 or 19, 2009 and two expedited removal orders and accompanying documents were issued for the same event. (Mot. Dismiss at Ex. C.)  Defendant returned to Mexico in January of 2010. (Munoz-Rubio Decl. ¶29.)

On January 6, 2010, Defendant again attempted to return to the United States and was apprehended. (*Id.* ¶ 29.)  CBP reinstated the April 19, 2009 expedited removal order and removed

3

him. (*Id.* ¶ 30; Resp. at Ex. C.)  A short time later he returned to the United States again, this time to Columbus, Ohio where he lived and worked for several years. (*Id.* ¶ 31.)

On September 17, 2013, Defendant was involved in a bar fight which brought him to the attention of Immigration and Customs Enforcement ("ICE"). (*Id.* ¶ 33.)  ICE detained Defendant, reinstated the April 17, 2009 removal order, and on September 24, 2013, returned him to Mexico. (*Id.*; Resp. at Ex. D.)

Defendant returned to the United States sometime in 2014. (*Id.* ¶¶ 34–35; Resp. at Ex. E.) On April 13, 2015, ICE apprehended Defendant after they were alerted to his presence when police searched his house for drugs. (*Id.*; Resp. at Ex. E.)  ICE allowed Defendant to remain in the United States for one year and work with the Columbus Police Department to apprehend those suspected of selling drugs. (*Id.* ¶ 35–48.)  On April 5, 2016 ICE returned Defendant to Mexico. (*Id.* ¶ 39; Mot. Dismiss at Ex. D.)

When Defendant returned to Mexico he was shot and injured by a group who had discovered he had helped the police while in the United States. (*Id.* ¶ 40.)  Defendant fled to the United States on January 20, 2019 feeling his life was being threatened. (*Id.*)  Eight months later police stopped Defendant for a traffic violation, which alerted ICE to his presence in the United States. (*Id.* ¶ 42; Mot Dismiss at Ex. B; Resp. at Ex. G.)  ICE detained Defendant and turned him over to the U.S. Marshals' custody. (Mot. Dismiss at Ex. B; Resp. at Ex. F.)  The instant criminal proceedings were initiated. (*Id.*)

Defendant now moves to dismiss the Indictment and avers that dismissal is proper because "the removal orders relied in the indictment violated his Due Process rights and are therefore not valid; as such the Indictment lacks an essential element of the offense." (Mot. Dismiss at 1.)  The Government submits that the Court should deny Defendant's Motion to Dismiss because

4

Defendant failed to satisfy all necessary elements to collaterally attack a prior deportation order under 8 U.S.C. § 1326(d). (Resp. at 11.) Additionally, the Government contends Defendant's claims of due process violations are directly contradicted by the record evidence. (*Id.*) Finally, the Government contends Defendant cannot prove prejudice. (*Id.*)

## II.

Federal Rule of Criminal Procedure 12(b)(1) permits parties to "raise by pretrial motion any defense, objections, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1).

To convict an alien criminal defendant of reentry, the Government must prove that the alien left the United States under order of exclusion, deportation, or removal, and then illegally reentered. 8 U.S.C. § 1326. A defendant accused of illegal reentry may collaterally attack his prior deportation by demonstrating that: "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). "To prove fundamental unfairness of an underlying deportation order, a defendant must show both a due process violation emanating from defects in the underlying deportation proceeding and resulting prejudice." *United States v. Estrada*, 876 F.3d 885, 886 (6th Cir. 2017) (citation omitted).

A defendant must satisfy all three of these conjunctive requirements. *Id.* at 885, 887; *see also United States v. Martinez-Rocha*, 337 F.3d 566, 568 (6th Cir. 2003) (noting that the "defendant must demonstrate that" the three prongs of § 1326(d) have been satisfied.). Further, "[b]ecause a final deportation order enjoys a presumption of regularity, once the government shows that the alien was deported while such an order was outstanding, the burden shifts to the

5

defendant-alien, and it is he who must prove each of § 1326(d)'s elements to overcome the presumed legality of the earlier deportation order." *United States v. Gonzales-Campos*, No. 2-13-cr-255, 2014 U.S. Dist. LEXIS 35081, at *10–11 (S.D. Ohio Mar. 18, 2014) (quoting *United States v. Adame-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010) (internal quotations omitted)).

### III.

The Court begins by discussing whether Defendant can challenge his removal under the expedited removal order. Next the Court will address the merits of Defendant's argument. The Court limits its analysis to § 1326(d)'s third prong. Defendant has not shown the alleged defects in the underlying expedited removal proceeding constituted a due process violation resulting in prejudice, and thus, he cannot show the removal order was fundamentally unfair.

**A. Challenge to the Expedited Removal Order**

Expedited removal orders provide a streamlined process by which United States officers can remove aliens who attempt to gain entry to the United States but are not admissible. 8 U.S.C. § 1225(b)(1). The expedited removal statute, § 1225(b), provides that when an alien seeks admission to the United States after arriving at a port of entry and does not have entry documents or citizenship, "the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* § 1225(b)(1)(A)(i).

Importantly, the expedited removal statute provides that "[i]n any action brought against an alien under . . . section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of [expedited] removal entered under subparagraph (A)(i) or (B)(iii)." *Id.* § 1225(b)(1)(D). Thus, on its face the statute does not allow for the Court to review Defendant's challenges to his expedited removal orders.

In *United States v. Mendoza-Lopez*, however, the Supreme Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." 481 U.S. 828, 838 (1987) (emphasis in original). Several circuit courts have held § 1225(b) unconstitutional in light of the holding in *Mendoza-Lopez*. *See e.g.*, *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1087 (9th Cir. 2011) ("[W]e must conclude that § 1225(b)(1)(D) is unconstitutional to the extent it prohibits '*some* meaningful review" in a § 1326 criminal prosecution of a claim that the proceeding that resulted in the expedited removal order was fundamentally unfair."); *United States v. Silva*, 931 F.3d 330, 337 (4th Cir. 2019) ("Because § 1225(b)(1)(D) prohibits [the defendant] from challenging the validity of the removal order that forms the basis—an element—of the § 1326 offense being prosecuted, it denies him due process. Accordingly, we conclude . . . that the provision is unconstitutional.").

Defendant argues that he is entitled to attack the proceeding that resulted in the expedited removal order because under *Mendoza-Lopez*, § 1225(b)(1)(D) is unconstitutional. The Government seems to concede this point as it does not argue Defendant is not entitled to attack the prior proceeding and instead argues only that Defendant cannot satisfy § 1326(d)'s requirements. Because the parties agree on this issue, the Court need not address the constitutionality of 8 U.S.C. § 1225(b)(1)(d). *See Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to the decision of the case."); *City of Pontiac Retired Emps. v. Ass'n Schimmel*, 726 F.3d 767, 771 (6th Cir. 2013) ("Under the doctrine of constitutional avoidance, we avoid constitutional determinations when a case can be resolved on other grounds.").

**B. Alleged Due Process Violations**

"Noncitizens in removal proceedings have long been protected by the Fifth Amendment's guarantee of due process of law." *Mendoza-Garcia v. Barr*, 918 F.3d 498, 503 (6th Cir. 2019) (citing *see Yamataya v. Fisher*, 189 U.S. 86, 101 (1903) (holding a noncitizen may not "be taken into custody and deported without giving him an opportunity to be heard" because "[n]o such arbitrary power can exist where the principles involved in due process of law are recognized.")). The procedures for expedited removal are laid out in 8 U.S.C. § 1225 and 8 C.F.R. § 235.

First, "the examining immigration officer shall create a record of the facts of the case and statements made by the alien . . . by means of a sworn statement using Form I-867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1)." 8 C.F.R. § 125.3(b)(2)(i). The alien must sign and initial each page. *Id.* Second, the immigration officer "shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement." *Id.* The alien shall sign the back of this form to acknowledge receipt. *Id.* "Interpretive assistance shall be used if necessary, to communicate with the alien." *Id.*

Defendant alleges that the expedited removal orders violated his due process rights because he was not given notice or an opportunity to respond. Defendant contends the official did not advise Defendant of the charge against him or read back the sworn statement for him to initial each page. In support of this argument, Defendant notes that the April 17, 2019 expedited removal order contained errors that would have been caught if the statement had been read back before he signed it. (Mot. Dismiss at 12–13, Ex. A.) Defendant contends the incorrect information includes the date of entry. (*See id.*) Additionally, Defendant contends all the pages were not initialed as required and instead only the final page was initialed. (*See id.*)

In response, the Government attaches Form 1-867A.  (Govt. Resp. at Exs. A, B.)  The Government explains that the regulations require the immigration officer to read the form to the alien.  (*Id.* (citing 8 C.F.R. § 235.2(b)(2)(i)).)  The form includes notice to the defendant of the charges against him including that the defendant does "not appear to be admissible or to have the required legal papers authorizing [his] admission to the United States" and that if the decision for refusal of admission is made, "you may be immediately removed from this country" and barred from reentry for 5 years or long.  (*See id.*)  The Government contends that "[w]hen read to the alien, the warnings provide clear notification that the alien is believed [sic] to have entered the country illegally and may be removed."  (*Id.*)  Defendant does not contest that the form gives notice and the Court agrees.  Defendant argues this form was not read to him.  The evidence, however, does not support this claim.

Defendant asserts the documents were not read to him and he did not know he was in a formal immigration proceeding.  (Munoz-Rubio Decl. ¶¶14–25.)  He also contends, however, he "do[es] not remember if [the immigration officials] spoke to [him] in English or Spanish." (Munoz-Rubio Decl. ¶¶ 11–12.)

Form I-867A, however, indicates that the interview was "[i]n the Spanish language" and that Defendant indicated that he understood the warnings.  (Govt. Resp. at Ex. A.)  Additionally, the forms indicate Defendant was advised of the proceeding, and that the forms were explained to, read to, and executed by, Defendant.  (*Id.* at Ex. B.)  Additionally, the forms indicate the immigration officials advised Defendant of his right to communicate with a consular officer and Defendant declined on more than one occasion.  (*Id.*)  Importantly, Defendant's signature is present three times on the forms.  (*Id.*)  Finally, and most importantly, part of the forms, informing Defendant of his rights, appears in the Spanish language with Defendant's signature just below the

9

information. (*Id.*) This Spanish language section includes notification that Defendant entered the United States illegally and has the right to call an attorney and consult with him. (*Id.*)

Thus, the undisputed evidence shows that at a very minimum Defendant did sign the forms at least three times, was interviewed in Spanish, and was informed that he was in the United States illegally and had the right to call an attorney. Looking at this evidence alone, it is likely this was enough to inform Defendant he was undergoing legal proceedings. The parties continue to dispute however whether the immigration official executing the forms provided Defendant notice and an opportunity to respond by reading him the sworn statement as the regulations required.

The Court notes that "[a]dministrative agencies are entitled to the presumption that they will act properly and according to the law." *FCC v. Schreiber*, 381 U.S. 279, 296 (1965). "In the absence of clear evidence to the contrary, courts presume that [public officials] have properly discharged their official duties." *United States v. Martin*, 438 F.3d 621, 634 (6th Cir. 2006) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)). Additionally, at this point the Court should not resolve factual disputes. *See* Fed. R. Crim. P. 12(b) ("A party may raise by pretrial motion any defense, objection, or request that the court can determine *without a trial* on the merits.") (emphasis added).

The Court need not resolve this factual dispute here. As the following section shows, even if the above did result in a due process violation, Defendant has not shown actual prejudice as a result of such due process violation.

## C. Prejudice

"[U]nder the fundamental fairness prong of a collateral attack on a prior removal order, a defendant must establish that the deficiencies in the deportation proceedings caused him actual prejudice." *United States v. Lopez-Callazo*, 824 F.3d 453, 460 (6th Cir. 2018) (citations omitted).

10

In order for a defendant to meet the actual prejudice requirement, "he must demonstrate 'that but for the errors complained of, there was a reasonable probability that he would not have been deported.'" *Id.* (citing *United States v. El Shami*, 434 F.3d 659, 665 (4th Cir. 2005)). Stated differently, a defendant must "show that his 'claims could have supported a different outcome.'"[1] *Mendoza-Garcia v. Barr*, 918 F.3d 498, 508 (6th Cir. 2019) (quoting *Sako v. Gonzales*, 434 F.3d 857, 9864 (6th Cir. 2006)). "This is not a generalized showing of prejudice; rather, the defendant must link the actual prejudice he claims to have suffered to the specific due process violation at issue." *Lopez-Callazo*, 824 F.3d at 460.

Defendant argues that had the immigration official given him notice that he was undergoing formal deportation proceeding, read him the sworn statement, and given him an opportunity to respond, he would have requested that his application be withdrawn. (Mot. Dismiss at 23–24.) Defendant contends, "it is highly plausible . . . [he] would have been allowed to withdraw his application for admission, or in other words, there would have been a different outcome in his case." (*Id.*) In support of this argument Defendant relies on a Ninth Circuit case *United States v. Raya-Vaca*, 711 F.3d 1195 (9th Cir. 2014). (*See id.*) Defendant contends that like *Raya-Vaca*, he only intended to join his family already in the United States, he was truthful and did not engage in fraud, and did not have a criminal history. (*See id.* (citing *Raya-Vaca*, 711 F.3d at 1195).) Thus, he argues, the immigration official likely would have granted him discretionary relief and allowed him to withdrawal his application and return to Mexico voluntarily. (*See id.*)

---

[1] Defendant, in his briefing, also includes the standard set by the Ninth Circuit under which the defendant need only prove that but for the due process violation he had a plausible ground for relief. Notably, this is not the standard adopted by the Sixth Circuit and instead sets a lower bar for what the defendant must prove. *See Roque-Cerda*, 2020 U.S. Dist. LEXIS 561 at *19–10 (noting that the Sixth Circuit has aligned itself with the Third, Fourth, Fifth, and Eighth Circuits in their reasonable likelihood standard instead of with the Ninth Circuit in its plausible ground for relief standard).

The Government first points out that the defendant in *Raya-Vaca* only had to establish plausible grounds for a different result, while Defendant must establish a reasonable likelihood of a different result. (Govt. Resp. at 18–20.) Additionally, the Government argues that because discretionary relief is entirely within the purview of the immigration official, including whether to tell an alien it is available, there are no facts which would establish a reasonable probability that immigration officials would allow the Defendant to withdraw his application on both dates in April of 2009. (*Id.* at 20–21.)

Looking at the record, nothing suggests that Defendant would have asked for discretionary relief had the immigration official informed him he was in a formal immigration proceeding and read him the sworn statement. Defendant states repeatedly he did not know he could ask to withdraw his application. (Munoz-Rubio Decl. ¶¶ 20, 24–25.) The forms do not inform him of this fact as whether to allow such is left to the discretion of the immigration officer. Thus, it is unlikely that had he been informed of the formality of proceedings and read the sworn statement he would have asked for discretionary relief. Thus, while the facts Defendant brings to light are compelling, in that he has no criminal history, was attempting to join his family, and did not commit fraud, they do not establish a reasonable probability that he would have asked for discretionary relief and further, certainly do not establish a reasonable probability that it would have been granted. Additionally, Defendant has certainly not shown a reasonable probability that discretionary relief would have been granted on all four occasions in which an expedited removal order was activated to remove him from the United States.

In sum, even if Defendant did establish a due process violation, it is not clear he has done so for in all four of his removal proceedings and further, he has not established a causal link between such violations and the Government's failure to consider him for discretionary relief on

all four occasions. *See United States v. Roque-Cerda*, No. 19-cr-20419, 2020 U.S. Dist. LEXIS 651, at * 24 (E.D. Mich. Jan. 3, 2020) (finding that at most the defendant had shown a theoretical possibility that he would have been considered for discretionary relief had the forms been read to him before he signed them which does not rise to the standard the Sixth Circuit has adopted).

## IV.

For the reasons stated herein, Defendant's Motion to Dismiss the Indictment (ECF No. 25) is **DENIED.**

**IT IS SO ORDERED.**

**8/3/2020**  **s/Edmund A. Sargus, Jr.**
**DATE**  **EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**